## Duncan v. Commonwealth.

(Decided Oct. 5, 1934.)

FRED LISANBY for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Otis Duncan, sometimes referred to in the record as Oddis Duncan, was convicted of the crime of grand larceny and sentenced to imprisonment in the state penitentiary for a term of one year.

On this appeal he insists that the evidence was not sufficient to take the case to the jury or to sustain its verdict, and this is the sole ground relied upon for a reversal of the judgment.

The proof shows that on Saturday night, June 3, 1933, a quantity of personal property was stolen from

the premises of G. W. Hinton, who resided near Turkey Foot in Scott county. Hinton and other members of his family attended an ice cream supper at a church in the neighborhood on that evening, and returned to his home about 11 o'clock. On Saturday afternoon he purchased several pounds of beef and placed it in a cellar where a number of cans of fruit and pickles were also stored. The cellar was located about 35 feet from the residence and near a chicken house. On the following morning, Mrs. Hinton discovered that the beef and the canned fruit and pickles were missing from the cellar, and, upon further investigation, it was discovered that twenty-five chickens and a quantity of meat had also been stolen.

Harry Duncan, father of appellant, resided on a farm near the Hinton farm. On Sunday morning after the theft Ezra Burgess, who owned a farm adjoining the land occupied by Harry Duncan, while walking across the Duncan land, found sixteen cans of fruit and pickles concealed among some bushes and trees about 175 yards from the Duncan home. Believing that the property had been stolen, he took one of the cans to his home and later delivered it to the officers. It was identified by Hinton as one of the cans taken from his cellar. Appellant, who resided at Mt. Sterling, accompanied by his wife, two children, and one George Pluckett, went to the home of his father on Saturday, June 3, for a visit, and remained until the following Tuesday. According to appellant, they traveled in the automobile of George Pluckett, whom he had met a day or two before. On Monday, June 5, Ezra Burgess and his son, George Burgess, saw appellant and a man, who was a stranger to the Burgesses, pulling weeds and placing them over a box in a ravine near Harry Duncan's home. When they saw Burgess, appellant and his companion left, but Burgess went to the box, removed the weed covering, and saw that it contained seven chickens. Ezra Burgess called his son, and at this point appellant's mother attempted to prevent George Burgess from going to the place where the chickens were concealed. Homer Burgess, another son of Ezra Burgess, saw appellant place several sacks in an automobile at his father's home on Tuesday afternoon. One of the sacks had a greasy appearance as though it contained meat. Appellant admitted that he placed one sack in the automobile when

he left his father's home, but stated that it contained meal.

Appellant's defense was an alibi. He testified that he and Pluckett were not out of his father's house after 7 o'clock on the evening of June 3, and that they retired about 10 o'clock. He is corroborated to some extent by Orville Duncan, his brother, and Harry Duncan. Orville Duncan admitted, however, that he and his father went to the ice cream supper and did not return to their home until about 11 o'clock. At that time his brother, Otis, was at home. Two witnesses, Miss Margaret Barnhill and Bradford Holland, who lived in the neighborhood and had known appellant from childhood, testified that they saw him and a stranger in an automobile on the road near the Hinton home between 10 and 11 o'clock on Saturday night. Matt Brewer testified that Harry Duncan gave him a piece of roast beef on Sunday morning, June 4. Appellant's father testified that he purchased some beef at a butcher shop in Lexington on Saturday afternoon, June 3, 1933, and on the following morning gave a part of it to Brewer. Appellant attempted to explain the chicken transaction by showing that his children went to the home of Harve Duncan, appellant's grandfather, got the chickens without Harve Duncan's consent or knowledge, and placed them in the box in the isolated spot where they were found by Burgess.

While the evidence against appellant is circumstantial, there are a number of circumstances from which the jury might have reasonably inferred that he was guilty.

He claimed that he was at his father's home on the evening the theft was committed and was not out of the house after 7 o'clock. He is contradicted on this point by two disinterested witnesses who saw him in an automobile with a stranger near the Hinton home between 10 and 11 o'clock that night. A part of the stolen goods was found concealed near his father's home where he was staying and on land in his father's possession. He was seen apparently attempting to conceal a box containing several chickens. He attempted to explain these and a number of other incriminating circumstances, but his efforts in this respect are not convincing.

The case is clearly one where the evidence is conflicting and where circumstances are shown which point

to appellant's guilt. Consequently, it was proper to submit the question of appellant's guilt or innocence to the jury, and, since there was evidence affording a reasonable ground upon which a conviction might be based, it cannot be said the verdict is palpably against the evidence. Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108; Newsome v. Commonwealth, 240 Ky. 333, 42 S. W. (2d) 306; Shepherd v. Commonwealth, 236 Ky. 290, 33 S. W. (2d) 4.

The judgment is affirmed.